1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12  J & J PUMPS, INC., a            NO. CIV. 2:11-599 WBS CMK
    California corporation,

13
             Plaintiff,            MEMORANDUM AND ORDER RE:
14                                 MOTION TO DISMISS

15        v.

16  STAR INSURANCE COMPANY, a
    Michigan corporation; and DOES
    1 through 10, inclusive,
17
             Defendants.
18  _____/

19
                          ----oo0oo----
20

21        Plaintiff J & J Pumps, Inc. ("J & J"), filed this

22  action against defendant Star Insurance Company ("Star") arising

23  from defendant's denial of plaintiff's claim under an employee

24  dishonesty provision of a property insurance policy.  Defendant

25  has filed a motion to dismiss for failure to state a claim upon

26  which relief can be granted pursuant to Federal Rule of Civil

27  Procedure 12(b)(6).  (Docket No. 18.)

28  I.   Factual and Procedural Background

                              1

1  Defendant issued a Commercial Lines Policy to plaintiff
2  for October 1, 2009, through October 1, 2010, and a renewed
3  policy for October 1, 2010, through October 1, 2011 (collectively
4  "Policies").  (Notice of Removal; Demand for Jury Trial Ex. A
5  ("Compl.") ¶ 4 (Docket No. 1).)  The Policies contain Commercial
6  General Liability, Inland Marine, and Commercial Property
7  Coverage Parts.  The Commercial Property Coverage Part includes a
8  Building and Personal Property Coverage Form.  This form states:
9  "We will pay for direct <u>physical</u> loss of or damage to Covered
10 Property at the premises described in the Declarations caused by
11 or resulting from any Covered Cause of Loss."[1]  (Def.'s Mot. Ex.
12 B, at B-50 (Docket No. 18).)

13  "Covered Property" is defined as "Building," "Your
14 Business Personal Property," and "Personal Property of Others,"
15 and these three terms are defined.  "Your Business Personal
16 Property . . . consist[s] of the following unless otherwise
17 specified in the Declarations or on the Your Business Personal
18 Property - Separation of Coverage form: (1) Furniture and
19 fixtures; (2) Machinery and equipment; (3) "Stock"; (4) All other
20 personal property owned by you and used in your business; . . .
21 ."  (<u>Id.</u>)  The definition of Covered Property is limited by
22 another section, which expressly states that Covered Property
23 does not include, <u>inter alia</u>: "Accounts, bills, currency, food
24 stamps or other evidences of debt, money, notes, or securities."
25 (<u>Id.</u> Ex. B, at B-51.)

26  The Commercial Property Coverage Part also includes a

27  _____

28      [1]  Unless significant, this Order omits the bolding of
    text in the Policies.

1  Causes of Loss - Special Form.  This form states: "A. Covered

2  Causes of Loss: When Special [sic] is shown in the Declarations,

3  Covered Causes of Loss means Risks of Direct <u>Physical</u> Loss unless

4  the loss is: 1.  Excluded in Section B., Exclusions; or 2.

5  Limited in Section C., Limitations." (<u>Id.</u> Ex. B, at B-89

6  (emphasis added).)  The Exclusions section states:

7      We will not pay for loss or damage caused by or resulting
       from any of the following: . . . (h) Dishonest or
8      criminal act by you, any of your partners, members,
       officers, managers, employees (including leased
9      employees), directors, trustees, authorized
       representatives or anyone to whom you entrust the
10     property for any purpose: (1) Acting alone or in
       collusion with others; or (2) Whether or not occurring
11     during the hours of employment.  This exclusion does not
       apply to acts of destruction by your employees (including
12     leased employees); but theft by employees (including
       leased employees) is not covered.

13

14 (<u>Id.</u> Ex. B-90-91.)

15      The Commercial Property Coverage Part also includes a

16 Property Special Broadening Endorsement, which expressly states

17 that it modifies the Building and Personal Property Coverage Form

18 and Causes of Loss - Special Form.  In the endorsement, Section

19 II, Covered Property, states that Scheduled Coverages include:

20     11.  Employee Dishonesty

21     You may extend the insurance that applies to Your
       Business Personal Property to:
22
           (a)  Loss or damage to any property, other than
23              contraband or property in the course of
                illegal transportation or trade, resulting
24              from dishonest acts committed by an
                "employee", whether identified or not, acting
25              alone or in collusion with other persons,
                except you or a partner, with the manifest
26              intent to:

27             (1)  Cause you to sustain loss; and also

28             (2)  Obtain financial benefit (other than

                              3

1                              employee benefits earned in the normal
2                              course of employment, including:
3                              salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for: a-the "employee"; or b-any
4                              person intended by the "employee" to receive that benefit.

       . . .

6    (Id. Ex. B, at B-69.)

7            In a separate provision, the endorsement also states:

8    "12. Money and Securities  You may extend the Insurance that

9    applies to Your Business Personal Property to apply to loss of

10   your 'money' and 'securities' resulting directly from 'theft',

11   disappearance or destruction . . . ." (Id. Ex. B, at B-71.)

12   "Theft" is "any act of stealing." (Id. Ex. B, at B-87.)   The

13   last page of the endorsement concludes by stating, "All other

14   terms and conditions of this policy remain unchanged." (Id. Ex.

15   B, at B-87.)

16           In May of 2010, plaintiff allegedly discovered that one

17   of its employees had failed to pay plaintiff's taxes to the

18   Internal Revenue Service ("IRS") and California Employment

19   Development Department ("EDD"). (Compl. ¶ 8.) "Rather, [the

20   employee] was hiding the money that should have been used to pay

21   those tax deposits in an undefined account with intent to benefit

22   herself, financially, and embezzle said funds." (Id.)  It

23   appears from the Complaint that the employee did not take the

24   money, but only hid it in a different account that was apparently

25   still within plaintiff's control.  However, plaintiff sustained

26   losses as a result of the employee's conduct in the form of

27   approximately $40,000.00 in penalties and interest on the unpaid

28   taxes. (Id. ¶ 10.)

4

1       On November 3, 2010, plaintiff submitted a claim to
2  defendant for benefits under the Employee Dishonesty provision of
3  the Property Special Broadening Endorsement.[2]  (Id. ¶ 11.)  At
4  defendant's request, plaintiff later provided a "Proof of Loss -
5  Employee Dishonesty Form" and additional documents.  (Id.)  On
6  January 17, 2011, defendant's claims administrator, Meadowbrook
7  Insurance Group ("Meadowbrook"), denied plaintiff's claim.  (Id.
8  ¶ 12.)  The Complaint alleges that defendant's basis for denial
9  was that the employee had not actually received the benefit of
10  her dishonest acts.  (Id. ¶ 24.)  On February 1, 2011, plaintiff
11  filed the instant action in state court, bringing three claims:
12  (1) breach of contract, (2) breach of the implied covenant of
13  good faith and fair dealing, and (3) declaratory relief.  On
14  March 3, 2011, defendant removed the action to this court
15  pursuant to 28 U.S.C. § 1441(a).  The court denied without
16  prejudice defendant's first motion to dismiss because neither
17  party had provided the court with the complete Policies, instead
18  only providing the court with the Property Special Broadening
19  Endorsement.

20  II.  Discussion

21       To survive a motion to dismiss, a plaintiff must plead
22  "only enough facts to state a claim to relief that is plausible
23  on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
24  (2007).  This "plausibility standard," however, "asks for more
25  than a sheer possibility that a defendant has acted unlawfully,"

26  _____

27       [2]   The Complaint does not mention the Money and Securities
    provision in the Property Special Broadening Endorsement, instead
28  alleging that it submitted a claim for benefits under the
    Employee Dishonesty provision.

1  <u>Ashcroft v. Iqbal</u>, --- U.S. ----, ----, 129 S. Ct. 1937, 1949
2  (2009), and "[w]here a complaint pleads facts that are 'merely
3  consistent with' a defendant's liability, it 'stops short of the
4  line between possibility and plausibility of entitlement to
5  relief.'"   <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  In deciding
6  whether a plaintiff has stated a claim, the court must accept the
7  allegations in the complaint as true and draw all reasonable
8  inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416
9  U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v.</u>
10 <u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322
11 (1972).

12        "When ruling on a Rule 12(b)(6) motion to dismiss, if a
13 district court considers evidence outside the pleadings, it must
14 normally convert the 12(b)(6) motion into a Rule 56 motion for
15 summary judgment, and it must give the nonmoving party an
16 opportunity to respond."  <u>United States v. Ritchie</u>, 342 F.3d 903,
17 907 (9th Cir. 2003).  The Ninth Circuit has held, however, that a
18 court may "consider certain materials--documents attached to the
19 complaint, documents incorporated by reference in the complaint,
20 or matters of judicial notice--without converting the motion to
21 dismiss into a motion for summary judgment."  <u>Id.</u> at 908.  A
22 document is incorporated by reference "if the plaintiff refers
23 extensively to the document or the document forms the basis of
24 the plaintiff's claim."  <u>Id.</u>

25        Defendant has provided plaintiff's claim for benefits,
26 (Def.'s Mot. Ex. A), and plaintiff has provided defendant's
27 denial letter.  (Schulz Decl. Ex. 1 (Docket No. 21).)  The court
28 declines to consider these documents because the Complaint does

1   not refer "extensively to the document[s]" and the documents do

2   not "form[] the basis" of plaintiff's claims. <u>Ritchie</u>, 342 F.3d

3   at 908.  However, the court will consider the Policies that

4   defendant has provided because the Complaint both refers

5   extensively to them and they form the basis of plaintiff's

6   claims. (<u>See</u> Def.'s Mot. Exs. B-C.)

7          The elements of a claim for breach of contract are: (1)

8   the existence of the contract; (2) performance by the plaintiff

9   or excuse for nonperformance; (3) breach by the defendant; and

10  (4) damages. <u>First Commercial Mortg. Co. v. Reece</u>, 89 Cal. App.

11  4th 731, 745 (2d Dist. 2001).  The issue in the instant motion is

12  whether plaintiff has sufficiently alleged defendant's breach of

13  the contract.

14         "While insurance contracts have special features, they

15  are still contracts to which the ordinary rules of contractual

16  interpretation apply." <u>Powerine Oil Co., Inc. v. Super. Ct.</u>, 37

17  Cal. 4th 377, 390 (2005) (quoting <u>Bank of the West v. Super. Ct.</u>,

18  2 Cal. 4th 1254, 1264 (1992)) (internal quotation marks omitted).

19  The parties' mutual intention governs and should be inferred, if

20  possible, from the written provisions. <u>Id.</u>  "The 'clear and

21  explicit' meaning of these provisions, interpreted in their

22  'ordinary and popular sense,' unless 'used by the parties in a

23  technical sense or a special meaning is given to them by usage,'

24  controls judicial interpretation." <u>Waller v. Truck Ins. Exch.,</u>

25  <u>Inc.</u>, 11 Cal. 4th 1, 18 (1995) (quoting <u>AIU Ins. Co. v. Super.</u>

26  <u>Ct.</u>, 51 Cal. 3d 807, 819-20 (1990)) (internal quotation mark and

27  citations omitted).

28         "A policy provision will be considered ambiguous when

7

it is capable of two or more constructions, both of which are
reasonable.  But language in a contract must be interpreted as a
whole, and in the circumstances of the case, and cannot be found
to be ambiguous in the abstract."  Id.  "If there is ambiguity .
. . it is resolved by interpreting the ambiguous provisions in
the sense the promisor . . . believed the promisee understood
them at the time of formation.  If application of this rule does
not eliminate the ambiguity, ambiguous language is construed
against the party who caused the uncertainty to exist."  AIU Ins.
Co., 51 Cal. 3d at 822 (citation omitted).  "In the insurance
context, [courts] generally resolve ambiguities in favor of
coverage.  Similarly, [courts] generally interpret the coverage
clauses of insurance policies broadly, protecting the objectively
reasonable expectations of the insured."  Id. (citations
omitted).

        "An endorsement modifies the basic insuring forms of
the policy and is an integral part of the policy. . . . An
endorsement can expand or restrict the coverage otherwise
provided by the policy."  Frontier Oil Corp. v. RLI Ins. Co.
153 Cal. App. 4th 1436, 1463 (2d Dist. 2007).  "Standing alone,
an endorsement means nothing.  Endorsements on an insurance
policy form a part of the insurance contract, and the policy of
insurance with the endorsements and riders thereon must be
construed together as a whole."  Id. (quoting Adams v. Explorer
Ins. Co., 107 Cal. App. 4th 438, 451 (2d Dist. 2003)).

        Defendant argues that plaintiff does not sufficiently
allege breach of contract because the triggering event for

property insurance did not occur in this case.[3]  "[T]he threshold

requirement for recovery under a contract of property insurance

is that the insured property has sustained <u>physical</u> loss or

damage."  <u>Simon Mktg. v. Gulf Ins. Co.</u>, 149 Cal. App. 4th 616,

623 (2d Dist. 2007) (emphasis added).  "The requirement that the

loss be 'physical' . . . is widely held to exclude alleged losses

that are intangible or incorporeal, and, thereby, to preclude any

claim against the property insurer where the insured merely

suffers a detrimental economic impact unaccompanied by a

distinct, demonstrable, physical alteration of the property."

<u>Id.</u> (quoting 10A <u>Couch on Insurance</u> § 148:46 (3d ed. 2005)).

In <u>Simon Marketing</u>, two similar employee dishonesty

provisions in two separate property insurance policies were at

issue.  The plaintiff in <u>Simon Marketing</u> was responsible for

promotion and marketing of games for McDonald's Corporation and

its franchisees.  <u>Id.</u> at 618.  The plaintiff's employee stole

game pieces, which led to lawsuits against the plaintiff and

allegedly the loss of the plaintiff's entire business.  <u>Id.</u> at

619, 621.

The court in <u>Simon Marketing</u> affirmed the trial court's

grant of summary judgment in favor of the insurers and held that

"the termination of Simon's business because McDonald's and

others cancelled their contracts with Simon is not the physical

loss, or damage, to insured property.  Nor are payments to settle

---

[3]     In its memorandum in support of its motion to dismiss,
defendant has not raised the issue of whether an employee must
receive the benefit of her dishonest act for the Employee
Dishonesty provision to apply, the ground on which it allegedly
relied to deny plaintiff's claim.

1  litigation, defense costs and costs of winding up its business

2  physical damage to property." <u>Id.</u> at 623.  The court elaborated:

3       The fact is that not every dishonest act of an employee
        is an insured loss under a contract of property
4       insurance.  There must be loss of, or damage to, insured
        property; to use Couch's phrase, "detrimental economic
5       impact unaccompanied by a distinct, demonstrable,
        physical alteration of the property" is not compensable
6       under a contract of property insurance.

7  <u>Id.</u> (quoting 10A <u>Couch on Insurance</u> § 148:46) (citation omitted).

8         Here, the court notes that the Building and Personal

9  Property Coverage Form and Causes of Loss - Special Form, which

10 the endorsement modifies, is consistent with the requirement of

11 physical loss or damage discussed in <u>Simon Marketing</u>.  These

12 forms expressly include a requirement that the plaintiff suffer a

13 "direct <u>physical</u> loss of or damage to" Covered Property caused by

14 Covered Causes of Loss, and Covered Causes of Loss are defined as

15 "Risks of Direct <u>Physical</u> Loss" unless limited or excluded.[4]

16 (Def.'s Mot. Ex. B, at B-50, B-89 (emphases added).)

17        While the Causes of Loss - Special Form expressly

18 excludes dishonest or criminal acts, the Property Special

19 Broadening Endorsement states that Scheduled Coverages include:

20 _____

21        [4]   In <u>Ward General Insurance Services, Inc. v. Employers
   Fire Insurance Co.</u>, 114 Cal. App. 4th 548, 555 (4th Dist. 2003),
22 the court considered substantially similar provisions in a
   Business and Personal Property coverage form and determined that
23 an endorsement had not modified the requirements.  <u>Id.</u> ("The
   Electronic Equipment and Software Coverage form, which the
24 parties agree was part of the policy, expressly modifies the
   [Building and Personal Property coverage] form.  But the
25 provision in the BPP form requiring a 'direct physical loss of or
   damage to Covered Property . . . caused by or resulting from any
26 Covered Loss' is not modified.  This form does amend the 'Causes
   of Loss — Special Form,' but only to narrow the exclusions.  It
27 does not modify or amend the basic requirement that the loss
   result from a 'RISK[] OF DIRECT PHYSICAL LOSS.'") (omission and
28 second alteration in original).

                                    10

"11. Employee Dishonesty  You may extend the insurance that applies to Your Business Personal Property to: (a) Loss or damage to any property, other than contraband or property in the course of illegal transportation or trade, . . . ." (<u>Id.</u> Ex. B, at B-69.)

Defendant argues, and the court agrees, that the purpose and effect of the Employee Dishonesty provision is to restore in part coverage excluded under the Causes of Loss - Special Form,[5] a form that expressly requires physical loss or damage.  The court is also persuaded by the reasoning in <u>Simon Marketing</u>, which involved substantially similar employee dishonesty provisions in property insurance policies and in which the court interpreted the policies as requiring physical loss or damage.[6]  Thus, plaintiff must allege physical loss or damage. The payment of tax penalties and interest simply do not constitute physical loss or damage.

---

[5]   Plaintiff appeared to agree with this proposition in its opposition memorandum. (Pl.'s Opp'n at 9:22-24 ("As STAR notes, the policy initially excludes loss or damage caused by dishonest acts of employees, but <u>reinstates that coverage under the broadening endorsement</u>.") (emphasis added) (Docket No. 21).) However, when asked by the court at the hearing, plaintiff's counsel disagreed with this proposition.

[6]   In that case, involving two policies ("Gulf" and "Federal" policies), the Gulf policy covered "loss of, and loss from damage to" covered property, which was money, securities, and tangible property with intrinsic value, caused by employee dishonesty. <u>Simon Mktg. v. Gulf Ins. Co.</u>, 149 Cal. App. 4th 616, 619 (2d Dist. 2007).  The Gulf policy specifically excluded the loss of the ability to realize income caused by the loss of or damage to covered property and liability to a third party for damages.  <u>Id.</u>  The Federal policy covered direct losses of money, securities, or other property caused by an employee's theft or forgery.  <u>Id.</u>  The Federal policy also excluded the inability to realize income and fees, costs, and expenses incurred in legal proceedings.  <u>Id.</u>

1    Plaintiff essentially concedes that physical loss or
2  damage did not occur, but advances two primary arguments against
3  the requirement.  First, plaintiff distinguishes Simon Marketing
4  from this case on the basis that the Employee Dishonesty
5  provision here does not specifically exclude the loss of the
6  ability to realize income caused by the loss of or damage to
7  Covered Property or liability to a third party for damages, as
8  the policies in Simon Marketing did.  However, the court in Simon
9  Marketing did not rely on that provision to find a requirement of
10 physical loss or damage.  Instead, the court pointed to the
11 exclusions only as "underlin[ing] the fact the policies [] insure
12 against physical loss of or damage to property, and not against
13 detrimental economic impact unaccompanied by a distinct,
14 demonstrable, physical alteration of the property."  Simon Mktg.,
15 149 Cal. App. 4th at 624; see also id. (stating in dictum that
16 "[i]t is also true that the bulk of the losses and damages
17 claimed by Simon in its discovery responses were excluded by the
18 provisions of the Gulf and Federal policies. . . . [because]
19 [l]oss of income is excluded under both policies, which
20 effectively excludes the loss of Simon's business, measured by
21 its loss of income").

22    Second, plaintiff argues that the Employee Dishonesty
23 provision extends the definition of "Your Business Personal
24 Property" to money, and plaintiff suffered a loss of money when
25 it paid its tax penalties and interest.  Plaintiff's
26 interpretation is based on the Employee Dishonesty provision
27 stating that plaintiff may extend "Your Business Personal
28 Property" to "[l]oss or damage to any property, other than

1  contraband or property in the course of illegal transportation or
2  trade . . . ."  (Def.'s Mot. Ex. B, at B-69.)  Plaintiff also
3  points to a separate provision in the endorsement, "12. Money and
4  Securities," which provides that plaintiff may extend "Your
5  Business Personal Property to apply to loss of your 'money' and
6  'securities' resulting <u>directly</u> from 'theft,' disappearance or
7  destruction while: . . . ."  (<u>Id.</u> Ex. B, at B-71 (emphasis
8  added).)  "Money" is defined as "currency, coins, bank notes, and
9  bullion in current use and having a face value and travelers
10 checks, register, checks and money orders held for sale to the
11 public."  (<u>Id.</u> Ex. B, at B-86.)  "Securities" is defined as
12 "negotiable and nonnegotiable instruments or contracts
13 representing 'money' or other property . . . ."  (<u>Id.</u> Ex. B, at
14 B-86.)  However, even if the Employee Dishonesty provision covers
15 money, plaintiff must still allege physical loss or damage.  <u>See</u>
16 <u>Simon Mktg.</u>, 149 Cal. App. 4th at 619 (stating that the policies
17 defined covered property as, <u>inter alia</u>, money).

18         Because plaintiff fails to allege physical loss or
19 damage, the court will dismiss the claim for breach of contract.
20 As plaintiff "does not allege or argue any unusual circumstances,
21 a finding that no insurance benefits were owed precludes a
22 finding of breach of the implied covenant of good faith and fair
23 dealing based on the failure to pay the same benefits."  <u>Angelo's</u>
24 <u>Towing, Inc. v. Progressive Cas. Ins. Co.</u>, Civil No. 09cv943,
25 2010 WL 3521971, at *4 (S.D. Cal. Sept. 8, 2010).  Thus, the
26 court will also dismiss the claims for breach of the implied
27 covenant of good faith and fair dealing and declaratory relief.

28         IT IS THEREFORE ORDERED that defendant Star Insurance

13

1  Company's motion to dismiss be, and the same hereby is, GRANTED;

2         AND IT IS FURTHER ORDERED that the complaint and action

3  herein be, and the same hereby are, DISMISSED.

4  DATED: June 9, 2011

5

6  _____
   WILLIAM B. SHUBB

7  UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14